## F. & R. BILLIOT *v.* J. B. ROBINSON.

Without a technical *contestatio litis* existing at the time of a sale, the acts of the parties may be such as to estop them from denying that the right purchased was a litiguous right.

A tender made to the attorney of a party is sufficient.

APPEAL from the District Court of the Parish of Terrebonne, *Roman*, J *J. H. Illsley* and *F. S. Goode*, for *D. A. Long*, warrantor and appellant:

On the 5th February, 1846, *S. G. Moore* sold to *J. B. Robinson*, with other property, lot No. 102, in township 20, range 18 east.

On the 7th April, 1848, the administrator of *Moore's* estate brought suit against *Robinson* for a balance due on the purchase, to which, on the 2d October, 1848, *Robinson* filed an answer, alleging want of title in *Moore*, and the pendency of a suit by *D. A. Long*, claiming the land. (This was an error, as no suit was pending nor had one been brought).

On the 25th March, 1849, *Rosette* and *Frederick Billiot* entered into the following agreement with *D. A. Long :*

" Whereas, the said *Rosette Billiot* and her son *Frederick* claim as their property a quarter section of land, situate on the east bank of Petit Caillou, known as the quarter section sold *J. B. Robinson* by *S. G. Moore*, and to which deed reference is hereby made for a more accurate description of said land, and believed to be lot No. 102, in township No. 20, of range 18 east, containing about 160 acres, more or less. Now as the said party of the first part are unjustly kept out of the possession of said land, and it requiring a suit to establish their claims thereto and put them in possession of the land, the said party, *D. A. Long*, agrees and binds himself to pay all the expenses attending said suit, and establish the title of the said *Rosette* and *Frederick* to the said land, so far as the same can be done, and hold the said party of the first part harmless against all costs of suit and other contingent expenses. And the first party agrees if upon a full hearing of the matter the said land 'shall be adjudged and decreed to them, to sell the same to said *D. A. Long* for the sum of one hundred and fifty dollars, and convey to him their interest aforesaid, in fee simple, upon his paying the sum agreed upon at such time as the title is clearly vested in the said *Rosette* and *Frederick*."

This act was recorded on the 6th April, 1849.

On the 31st March, 1849, suit No. 356 was instituted by *Rosette* and *Frederick Billiot*, against *J. B. Robinson*, claiming the land ; citation issued and was served on the 2d April, 1849. The administrator of *Moore's* estate filed an intervention on the 19th October, 1850, and on the 22d October, 1851, he filed a supplemental petition of intervention, alleging that plaintiffs had parted with all their interest in the land by the act above quoted, dated the 25th March, 1849, praying that *Long* be cited, and that he be decreed to have purchased a litigious right, etc. This suit was dismissed on the 8th October, 1852, the plaintiff having been called at the courthouse door and not appearing.

On the 21st April, 1853, the petition in the present suit was filed by *Rosette* and *Frederick Billiot* against *Robinson*, claiming the land, alleging that he has taken possession of the land without a shadow of a title. Service of this petition was accepted by the defendant, but the acceptance is not dated. Default was not taken until the 21st November, 1853, and the defendant filed his answer on the 25th November, 1853, calling the administrator of *Moore's* estate in warranty, who came in and answered on the 2d December, 1853. In his answer to the call in warranty, the administrator of *Moore's* estate asked to have *Long* made a party, alleged that he had purchased a litigious right, and prayed to be released on paying to *Long* the price of his purchase, and strenuously contested the validity of the original claim of the *Billiots*. Default was taken against *Long* on the 14th July, 1857, who filed his answer, claiming title, on the 6th October, 1857.

On the 26th April, 1853, *Rosette* and *Frederick Billiot* passed a formal act of sale of the land in question to *D. A. Long*.

These being the facts, two questions arise :

1. Did *Long* purchase a litigious right in the intendment of Articles 2622 and 2623 of the Civil Code.

67

BILLIOT
v.
ROBINSON.

2. Was the tender valid.

*First*—Is this a litigious right subject to the provisions of Art. 2622 of the Civil Code?

By the Roman law the transfer of a litigious right was originally prohibited, and the suit continued as if no such transfer had been made. *Tam quam si nihil factum sit lite peragenda.* The right conferred by Art. 2622 was established by Anastasius in the law *per diversas*, and confirmed by Justinian in the law *ab Anastasio.*

Art. 2622 of the Civil Code, found under the head " of the assignment or transfer of debts or other incorporal rights" provides "he against whom a litigious right has been transferred may get himself released by paying to the transferee the real price of the transfer together with the interest from its date."

Art. 2623. "A right is said to be litigious whenever there exists a suit and contestation on the same.

Another definition of a litigious right is found in Art. 3422, which provides, " whenever the terms of law employed in this Code *have not been particularly defined therein,* they shall be understood as follows;" and sec. 22 of that Article defines litigious rights to be " those which cannot be exercised without undergoing a law suit. "

Now we contend that section 22 of Article 3522 has no application to the litigious rights spoken of in Article 2622, for the next Article particularly defines what litigious rights are subject to the provisions of Art. 2622. And it is, as if the language of Art. 2622 had been, " he against whom a right has been transferred on which there exists a suit and contestation may get himself released, etc."

Now, what constitutes " a suit and contestation?" It is necessary that there should be a petition filed and served on the defendant, the cause must also be at issue.

C. P., Art. 357, "The cause is at issue when the defendant has answered, either by complying or denying the facts set forth in the petition, or by pleading such dilatory or peremptory exceptions as he is bound to plead *in limini litis,* pursuant to the provisions of this Code."

C. P. Art. 358, " when the defendant pleads some declinatory exception, without answering to the merits, there is no issue joined."

C. P. Art. 359, " the joining of issues is in fact the foundation of the suit, as citation is that of the action. It is only after this is done that the suit begins; the parties are then in a situation to discover what evidence is necessary in support of their respective claims."

C. P. Art. 360, " when the defendant suffers judgment by default to be taken against him, the issue is joined tacitly, etc."

In the case of *Prevost's Heirs* v. *Johnson, et al.,* 9 Martin, Judge Martin in construing a provision in the Old Code, similar to Art. 2623 of the present Code, says : " It seems that a suit brought does not *alone* suffice, that it is not enough that there should be a petition, that a copy of it and a citation should be served on the defendant, it is necessary there should be an *answer,* perhaps any plea will not suffice. *In the words of the statute there must be a contestation."*

In *Pearson* v. *Grice,* 6 An. 137, Judge Preston said : " that the Article 2623, and sec. 22 of Art. 3522 were not inconsistent, and that the impossibility of exercising the right without undergoing a lawsuit is never ascertained until the lawsuit is commenced," which, according to Art. 359 of the C. P. is only after issue is joined, and the term litigious right being particularly defined in Art. 2623, Art. 3522 if inconsistent with it must yield.

Provisions similar to Articles 2622 and 2623 of our Code are found in Articles 1699 and 1700 of the Code Napoleon. In fact the language of the two Codes is exactly the same. Let us, then, see what interpretation has been placed on these Articles in France.

Répertoire Général, volume 5, page 910, sections 70, 71 et 72 :

" Pothier enseignait que ces expressions comprenaient toutes les créances qui sont contestées ou peuvent l'être, en total ou en partie, par celui qu'on prétend débiteur, soit que le procès soit déjà commencé, soit qu'il ne le soit pas encore, mais qu'il y ait lieu de l'appréhender. Au contraire, le Président de Lamoignon, n'admettait le retrait que lorsqu'il y aurait litige engagé, ce qui était également professé par Rousseaud de La Combe et par Mornac. Les rédacteurs du Code ont adopté cette dernière opinion, et ils ont déclaré dans l'Art. 1700 que la chose est censée litigieuse dès qu'il y a procès et contestation sur le fond du droit."

It was decided by the *Cour de Cassation* in the case of *Besserve* v. *Langlomé*, 5 juillet 1819, that Article 1700 C. N. was restrictive of Article 1699, and was adopted to define accurately what rights were subject to the provisions of Art. 1699, and put an end to all uncertainty on that subject. See also Cour de Cassation, 24 janvier, 1827, *Soufflet* c. *Héritiers Collin ;* Troplong, de la vente, vol. 2, p. 493 ; Dalloz, Jurisprudence du Royaume, vol. 12, p. 926.

Marcadé, vol. 6, p. 352, says : " Il faut d'abord qu'il y ait actuellement procès, et il ne suffirait pas dès lors que ce procès parût imminent, inévitable, et que le droit ait été qualifié de droit litigieux dans l'Acte même de cession, puisque cette qualification n'a pas alors le sens de notre Art. 1700." Duvergier, Vente, vol. 2, No. 362.

Guillaume, Code Napoléon, p. 579 : " La chose n'est censée litigieuse que quand il y a procès sur le fond du droit. La loi a voulu qu'il fût certain que le droit est contesté, c'est-à-dire, qu'il y a des chances douteuses sur son principe et son existence. Ainsi le déclinatoire ou la nullité d'exploit proposée contre l'action ne suffirait pas ; mais il en serait autrement si l'on contestait la validité du titre du demandeur même sous le rapport de la forme."

The Court of Cassation, in *Guirail* c. *Epoux Davancens*, 11 fév. 1851, held that Art. 1700 C. N. did not apply to Art. 1597, which corresponds with Art. 2422 of our Code, prohibiting transfers of litigious rights to public officers connected with courts of justice and others.

Journal du Palais, vol. 1, 1846, p. 127, in the case of *Grassière* c. *Abeille*, the court held, " Attendu que l'Art. 1699 du Code Civil est une exception au droit commun en matière d'achat et de vente, que dès lors il doit, dans l'application, être restreint au cas qu'il a prévu." See also *Guyonné* c. *Fallampin*, 5 mai, 1836.

In *Greffulhe et autres* c. *Mille*, 7 juillet, 1837, the court held, " La chose cédée est réputée litigieuse dès qu'il y a procès et contestation sur le fond du droit. Que d'après cette définition, qui reproduit les principes du droit romain, que l'ancienne jurisprudence avait modifiés, il est certain que la loi n'imprime au droit cédé le caractère litigieux que lorsqu'au moment de la cession le droit est déjà l'objet d'un débat judiciaire entre le cédant et le débiteur." See also Journal du Palais, vol. 1, 1840, p. 657 ; *Reden* c. *Chazal*, 16 mai, 1839.

Journal du Palais, vol. 1, 1841, p. 461, the Court of Cassation held : " Attendu, en droit, que le retrait autorisé par l'Art. 1699 du Code Civil ne peut, suivant l'Art. 1700 du même code, être exercé que lorsqu'il existe, au moment même de la cession, procès et contestation sur le fond du droit. Que cette dernière disposition est limitative. Qu'ainsi il importe peu que le droit ait été cédé comme litigieux, que la vente ait été faite aux risques et périls de l'acheteur, et qu'elle ait un caractère aléatoire, parceque ces circonstances ne constituent pas le procès et la *contestation impérieusement exigés* par l'Art. 1700 du Code Civil." See also Cour de Cassation, 20 mars, 1843 ; Journal du Palais, vol. 2 of that year, p. 194 ; also, Journal du Palais, vol. 9, 18 Dec. 1811, p. 787.

Marcadé, vol. 6, p. 404 : " Il faut d'abord qu'il y ait procès ; il ne suffirait pas dès lors, ni d'une citation en conciliation, puisqu'elle n'est qu'un acte tendant à empêcher le procès, ni même du procès-verbal de non-conciliation, puisqu'il n'y aurait alors qu'imminence d'un procès et non procès existant. Il n'y aurait pas non plus procès légalement, si le défendeur opposait une exception de chose jugée, et qu'elle fût admise, puisqu'il serait ainsi décidé que le litige n'était pas possible. Si une simple nullité d'exploit était opposée à l'action intentée la veille de l'expiration du délai de prescription, la circonstance de fait que l'annulation de l'exploit entraînera par contre-coup l'extinction du droit, n'empêche pas que le procès est étranger au fond du droit, puisque la question n'est pas l'existence du droit, mais seulement la validité de l'instance actuelle.

Rogron, Code Français Expliqué, Art. 1700 : " Bien que le bon droit du vendeur soit évident, il suffit qu'il y ait procès et qu'on le lui conteste, pour que la chose soit censée litigieuse et que l'acheteur puisse être écarté. Ainsi, il faut qu'il existe non-seulement une contestation, mais encore procès né sur le fond du droit. *De dominio causa movetur,* comme le voulait la loi romaine."

Now, tested by these principles, the right purchased by *Long* was not a litigious one, subject to the provisions of Art. 2622 Civil Code. It is a mistake to suppose that that Article was adopted to *prevent* litigation ; it was adopted for the purpose of putting an end to litigation already commenced. Now, *Long* acquired his rights by the Act passed on the 25th March, 1849, at which time no suit had been brought. The *Billiots* did not sue until the 31st March, 1849, six

BILLIOT
v.
ROBINSON

days after *Long* had acquired these rights, and this suit was afterwards abandoned. It is true that a subsequent act was passed by the *Billiots*, but not signed by *Long*, on the 26th April, 1853, five days after the petition in the present case was filed, but long before any default was taken or answer filed ; so, whether we consider the act of 26th March, 1849, or the act of 26th April, 1853, there did not exist the " *suit and contestation on the same,*" necessary to constitute a litigious right.

In France it was once held that the Art. 1699 C. N. did not apply to transfers of land. It seems now to be settled, that one in possession and contesting the right of a claimant, can avail himself of the right to purchase, from one who buys the claimant's litigious rights, at the price of the cession. See Cour de Cassation, 24th Nov., 1818 ; Commune de Laroche, *Canilhac c. Ipcher* ; Bourdeaux, 20 juin, 1819, *Ponter c. Duplan ;* Cour de Cassation, 28 janvier, 1836, *Perez c. Commune,* etc.; Journal du Palais, vol. 1, 1853, p. 557 ; Journal du Palais, vol. 1, 1840, p. 421 ; Répertoire Général, vol. 5, p. 912.

We might object that the administrator of *Moore's* estate is not in possession, and we do object that it is only *Robinson*, the defendant, who could under any circumstances require us to surrender to him our rights. The *Billiots* had no claim and brought no suit against *Moore's* estate ; their claim was against *Robinson* alone, and it is *Robinson*, and not the *Billiots*, who brings the suit against *Moore's* estate. If *Robinson* should transfer his rights against *Moore's* estate to a third person, after the call in warranty had been made, and after a contestation should arise in that call, then *Moore's* estate could claim and exercise the right provided in Art. 2622. Our claim is against *Bobinson* and *Robinson* alone, but if your Honors should decide differently, then we say, that when the *Billiots* transferred their claims to *Long*, in 1849, no suit was pending in regard to the ownership of the land between any parties, and that when the *Billiots* signed the act of 1853, ratifying and confirming the act of 1849, no suit and contestation existed between any parties ; a petition had been filed by the *Billiots* against *Robinson*, but no default had been taken nor answer filed. And the administrator of *Moore's* estate, who claims that a litigious right against him had been sold, had not even been mentioned.

2. If the right was a litigious right, has the requisite legal tender been made ?

If the right acquired by *Long* was a litigious right, (which it clearly was not,) and *Robinson's* warrantor might avail himself of the privilege of substituting himself to the purchase of the said right, has he placed himself in the legal position to do so, by actually tendering and depositing, at once, the real price of the transfer, together with the interest from its date, and instantly ceasing all judicial contest as to the validity of the original claim.

The first transfer or promise of sale was made to *Long* on the 25th March, 1849, and recorded on the 6th of April, of the same year ; this was known to *Moore's* administrator on the 22d October, 1851. (See his intervention in suit No. 356.) The last transfer was passed on the 26th April, 1853, five days after the filing of the *Billiots'* petition. And if the right or title of the *Billiots* became a litigious one, simply because this petition had been filed, then from that instant the penalty imposed by Art. 2622 might have been invoked, and no subsequent transfer by *Long* to a third person could have defeated the right of substitution to *Long's* purchase of the land in controversy.

On the 2d December, 1853, the warrantor filed his answer in this suit, and therein sets up against the *Billiots* and *Long*, whom he makes a party to the suit, a controverted defence against the original claim for the land, thereby defeating the very object of the law, instead of abandoning the litigation and asking to be substituted to *Long's* purchase, of which he certainly then had full knowledge, as he actually refers to it, and claims the benefit of it in his answer.

When the warrantor filed his answer, on the 2d December, 1853, and asked to take *Long's* place, why did he not then do effectually what he absolutely attempted to do when the case was called for trial four years afterwards, make a legal tender of the price of the transfer and deposit the money in court, and at once cease all further contest? For the very plain reason, that he thought he might perhaps defeat the *Billiots'* claim and thus rid himself of *Long*, and save the price paid by *Long* to the *Billiots*. And if he failed in this, then he would be legally substituted to *Long's* transfer.

This is a stronger case than any previous one submitted to and decided by this court, among which are those of *Pearson* v. *Grice*, 6 An. 338 ; *Winchester* v. *Cain*, 1 Rob. 424; *Leftwich et al.* v. *Brown*, 4 An. 104.

But if the warrantor was in time to make the tender, did he make it according to law?

He proved that he had offered to the attorney of Mr. *Long*, on the — day of ——, 1857, $227 78, being $150 principal, $34 40 interest, and $43 70 costs. Interest at five per cent. per annum was calculated to the date of the tender from the 26th April, 1853, the date of the confirmatory act passed by the *Billiots*.

This tender was held sufficient. If it was, we must disregard entirely the agreement between the *Billiots* and *Long* in 1849; for, if we consider that *Long* acquired the rights of the *Billiots* at that time, the amount tendered is not sufficient, as interest should have been calculated from the date of that agreement.

The law requires the defendant in such cases to reimburse the plaintiff his entire outlay. It may be true that *Long* did not pay the *Billiots* the price until the 26th April, 1853; but Art. 2622 C. C. expressly provides that interest must be allowed from the transfer. Besides, *Long* agreed to pay the fees of counsel, and all other expenses, and we contend that a sum sufficient to cover these fees and expenses should have been tendered.

Nor can the administrator contend that he was not notified of the agreement of 1849, for in his intervention in the case No. 356, filed 22d October, 1851, he expressly mentions that agreement, and prays to be released on paying *Long* the price paid by him. This conclusively shows that it is to the agreement of 1849 that we are to look both for the purpose of considering whether the right was a litigious right and for the purpose of calculating interest on the amount paid by *Long.*

We contend further that a tender to *Long's* attorney was not sufficient. C. P. 404, 407; C. C. 2164; *Mudd* v. *Stille*, 6 La. 19.

The administrator cannot contend that *Long* being absent he could only tender the amount to his attorney, for he had been informed ever since the 22d October, 1851, that *Long* had purchased the rights of the *Billiots*, and he had six years in which to make the tender to him personally, most of which time *Long* was present in the parish.

Both a tender and deposit should have been made. C. C. 2161; *Benton* v. *Roberts*, 2 An. 243; *Degoer* v. *Hellen*, 2 An. 496; *Small* v. *Zacharie*, 4 Rob. 144. It is true that the administrator asked and obtained leave to deposit the amount in court, but *non constat* that he did it.

We, therefore, respectfully contend that the judgment of the District Court should be reversed; because—

1. The right purchased by Mr. *Long* was not a litigious right.

2. Even if the right was a litigious one, the tender was insufficient; because— *First.* The amount was not sufficient. *Second.* The tender should have been made to *Long*, and not to his attorney. *Third.* The formalities of the law were not complied with in making the tender.

*Connolly & Rightor*, for defendant and appellee:

This suit was instituted as a petitory action, on the 21st of April, 1853, to recover a tract of land in the parish of Terrebonne; and the facts are as follows: Plaintiffs claim title to section 102 in township 20, range 18 East. then and now in the possession of the defendant, *Robinson*, who holds by virtue of a purchase from *S. G. Moore*, dated February 5th, 1846. Defendant answered on the 23d of November, 1853, by a general denial, setting forth his title as derived from *Moore*, and calls in warranty *James L. Cole*, administrator of the estate of *Moore*, on the 2d of December, 1853. *Cole* answers by a general denial; avers that *Moore* had sold to *Robinson* two tracts of land, one of which is that now in dispute; that when the price fell due, *Robinson* refused to pay the same; that being sued, he answered, on the 2d of October, 1848, that *D. A. Long* claimed a part of the land and threatened him with eviction; that afterward, *Long*, being then *Robinson's* overseer, agreed with the *Billiots* to pay the expenses of a suit against *Robinson* to recover section 102, and on the establishment of their title, to buy the land for one hundred and fifty dollars; that on the 31st of March, 1849, suit was accordingly instituted against *Robinson* in the name of the *Billiots*, which suit respondent verily believes was instigated by *Robinson* himself—but which suit was dismissed without ever having been brought to a trial. That on the 26th of April, 1853, (after the filing of this suit) *Long* bought the land from the *Billiots* for one hundred and fifty dollars; that from all the circumstances of the case respondent believes that *D. A. Long* is an interposed person by *Robinson*, who stirred up this suit in order to avoid paying the price of the land; and that *Long*

having really purchased for *Robinson*, said *Robinson* has thus quieted his own title. He further alleges, that if *Long* be really a purchaser for his own account—he was knowingly the purchaser of a litigious right, and that respondent has the right to release himself from this suit and quiet his title, by paying to *Long* the sum of one hundred and fifty dollars, paid for the land, with interest and costs. The answer closes with a prayer that *Long* be made a party to this suit, &c., &c. Such was the state of the pleadings up to the 6th of October, 1857, (the case having already been fixed for trial,) when *Long* first makes his appearance in court, by filing his answer and petition in intervention, in which he admits the two acts under private signature, described and referred to in the answer of *J. L. Cole*, said acts bearing date 25th of March, 1849, and 26th of April, 1853, and duly recorded, avers himself to be, in virtue of said acts, the sole owner of the land in dispute, as transferree of the *Billiots*, whose allegations and averments he adopts and makes his own, and prays that he be declared owner of the tract of land in dispute.

The court will observe the confusion and uncertainty prevailing in our original answer, on the part of *Cole*, warrantor ; that uncertainty concerning the nature of *Long's* transactions with the *Billiots*, resulting from his relations towards *Robinson*, and from all the circumstances of the case, which made it doubtful whether he was not the mere cat's paw of *Robinson*, who would thus have covertly quieted his own title. That uncertainty was only removed by *Long's* appearance in the suit, and positive claim of title for himself, personally. His appearance dispelled all *legal* doubts as to the position of the parties ; and we were then, and *only* then, clearly given to know who was the real claimant—who was our real adversary. It was only when he had assumed this fixed identity, that we were in a position to use all the weapons of the law in our defence. We chose to avail ourselves of the wise and equitable provisions of Article 2622 of the Civil Code, and on the 5th of October, the very next day after the filing of *Long's* petition in intervention, we made a tender to *Long's* attorney of record, of the sum of $227 76, the amount of the principal, interest and costs of the purchase from the *Billiots*, which being refused, we deposited in court.

It is objected :

1st. That this is not a case of the purchase of a litigious right.

2d. That the offer of payment comes too late.

A right is said to be litigious, when there exists a suit and contestation on the same. C. C., 2625. Litigious rights are those which cannot be exercised without undergoing a law suit. C. C. 3522, No. 22.

Judge Preston reconciles the apparent inconsistency of these definitions, by saying that " the impossibility of exercising the right without undergoing a law suit, is never ascertained until the suit is *commenced*. And it becomes a litigious right by the *commencement and existence* of the law suit." *Pearson* v. *Grice*, 6 An. 137. The question of the litigiousness of the rights purchased, is then to be decided by a simple comparison of dates. The second agreement made by *Long*, with the *Billiots*, by which he became the purchaser of their title, bears date *April 26th*, 1853. This suit was " commenced and existed," *on the* 23*d of April*, 1853. *Robinson* had accepted service of the petition. It would seem that this simple statement would put the question at rest ; but the plaintiffs insist that the mere inception of the suit was not sufficient to render litigious the rights which it asserted ; but that they only became litigious when their validity was put at issue by defendant's answer, filed on the 25th of November, 1853.

In support of this view of the subject, they cite the case of *Prevost's heirs* v. *Johnson et al.* 9 M. 123. Your Honors will observe, that the question before the court in that case, was not whether the commencement of a suit rendered the rights which it enforced, litigious, but whether " the right purchased by the defendants can be said to be a litigious one, *although no suit was ever instituted* for the recovery of the premises." That is a very different question, and no one will impugn the propriety of the negative decision of the court. It is true that the court declare *arguendo*, and for the purpose of preparing an argument *a fortiori*, that " it is necessary there should be an answer." But such *obiter dicta* are not entitled to any weight as authority. However that may be, the present case is to be decided under laws different from those which prevailed at the time the case referred to was decided. The Code of 1825 presents, with regard to the question at issue, a marked difference from the Code of 1808. The latter of which contains no supplemental definition as that contained in Article 2522, No. 22, C. C.

That Article modifies and enlarges the definition previously given in Article 2625, and gives a broader scope and application to one of the wisest and most salutary rules of the civil law. The authority of Judge Preston, which we have already invoked, gives a simple and sensible interpretation of the apparent conflict between the two Articles, which, taken together, show no contradiction, but rather the fuller development and extension of a principle whose operation was too much restricted under the former Code. According to Marcadé, vol. 6, p. 351, there was great diversity in the ancient jurisprudence of France, as to what was necessary to constitute a litigious right. " Les parlements de Paris et Toulouse, s'arrêtant au fait matériel, déclaraient droits litigieux tous ceux et uniquement ceux sur lesquels il y avait litige au moment de la cession. Mais cette idée était vivement critiquée," &c. The parliament of Bordeaux, on the other hand, determined by an appreciation of the circumstances of the case, the character of the ceded right. The Code Napoleon has adopted and consecrated the former system as being the best calculated to relieve the courts from long and interminable inquiries : " Il a trouvé plus sage de s'en tenir au fait matériel. The legislators of our present Code, adopting the jurisprudence neither of the parliament of Paris nor that of Bordeaux, have taken a middle ground between the two. Not requiring, like the former, that there should be actual contestation of the right in order to render it litigious ; nor permitting, like the latter, an inquiry which would, of itself, be a lawsuit. The commencement of the suit, according to the result of the two Articles of our Code, on the subject, taken in conjunction, renders litigious the right asserted by the suit.

The plaintiff urges that even if the right is litigious, it is too late for us to claim the right of purchasing it. There is no provision of law limiting the time within which parties may avail themselves of the privilege conferred by Article 2622. But we submit, that the offer and tender of payment to *Long* of the price of his purchase, with interest and costs, was made as soon as it could possibly have been made. It was made the very next day after he had appeared in court and demanded the enforcement of the right. Up to that time, we were totally in the dark as to the real ownership of that right ; we thought, and the circumstances of the case justified the belief, that *Robinson* was the real purchaser. But so soon as *Long* appears and asserts his right, we offer to pay him the sum for which he bought it. How then can it be said we are too late ? " Il a été jugé que le retrait litigieux peut être exercé pour la première fois en appel, alors surtout que c'est seulement depuis l'instance ouverte devant la cour que celui qui l'exerce a eu connaissance des clauses et conditions de la cession. Cette action constitue en effet une simple défense à la demande principale." Répertoire Géneral, vol. 5 ; Droit's Litigieux, Nos. 138 and 143. For further elucidation of this case we refer to the able opinion of the Judge of the lower court in this case, and respectfully ask that the judgment of said lower court be affirmed.

Plaintiff denies the validity of the tender made by us of the purchase price of the litigious right. There is no law or rule of practice requiring a legal tender in such a case, and the mere word " tender" used by the court in the decisions cited, cannot introduce a rule not contained in the Codes. The word " tender" is not there used (in the decisions) in its strictly legal sense, but only to signify offer to pay—not " offres réelles."

MERRICK, C. J. The parties to this suit present the question as to the manner in which Articles 2622, 2623 and 3522, No. 22, should be construed.

Plaintiff's counsel contends that a thing cannot become litigious until there is a contestation concerning it, viz : an answer putting the cause of action at issue. On the other hand, the defendant contends that there is a litigious right whenever a suit is commenced ; that it becomes a litigious right by the commencement and existence of a lawsuit.

The plaintiff bases his argument upon Article 2623 of the Civil Code, which is in these words : " A right is said to be litigious whenever there exists a suit and a contestation on the same," and the commentators upon the corresponding Article of the Napoleon Code.

The defendant relies upon No. 22 of Article 3522 of the Civil Code, which declares that " LITIGIOUS RIGHTS are those which cannot be exercised without undergoing a lawsuit."

BILLIOT
v.
ROBINSON.

We do not feel called upon to decide these questions, but shall dispose of this case upon its peculiar facts.

The intervenor's title was acquired after suit brought, and in pursuance of a previous contract, in which it was expressly recited that plaintiffs were unjustly kept out of possession, and that a suit was required to establish their claims thereto and put them in possession, and in which the intervenor bound himself to pay all expenses attending the suit, and to save the plaintiffs harmless from all costs and other contingent expenses.

It further appears, from defendant's answers to interrogatories, that the intervenor bought the interests of the plaintiffs at about one-twentieth of the value of the tract, at the instance, and after a consultation with *Robinson*, the defendant, and *that the suit itself* was instituted by lawyers employed by *Robinson* at the request of *Long*, the intervenor. And now *Robinson*, in the event of an eviction, demands judgment over against *Cole*, administrator of *Moore*, his warrantor. We think that the parties plaintiff and intervenors are estopped by their recitals and their conduct from now denying that the right which *Long* purchased was a litigious right. There is evident collusion between them and the defendant, and we think we shall do justice by holding them to their admissions, and considering them within the spirit of Articles 2622 and 2623 of the Civil Code. If a technical *contestatio litis* had not yet been formed, the parties have admitted in their solemn acts that a real one was before them.

We see no objection to the form in which the tender was made and the money paid into court.

There being collusion between these parties we think the party cited in warranty was justified in making the tender.

Judgment affirmed.

COLE, J., recused himself.